IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRYAN THOMAS, IDOC # R12763, et al., | ) |
| | ) |
|               Plaintiffs, | ) |
| | ) |
| vs. | )   CIVIL NO. 11-240-GPM |
| | ) |
| GLADYSE TAYLOR, et al., | ) |
| | ) |
|               Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiffs Bryan Thomas and Alfonso Paka are prisoners in the custody of the Illinois Department of Corrections ("IDOC"); Thomas currently is confined in the Pontiac Correctional Center, ("Pontiac") while Paka is confined in the Robinson Correctional Center ("Robinson").[1] Thomas and Paka bring this action pro se pursuant to 42 U.S.C. § 1983 for alleged violations of their constitutional rights by persons acting under color of state law. This case is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

---

1. IDOC prisoners William Radcliffe and Ronald Kevorkian originally were Plaintiffs in this case; however, their claims were dismissed by the Court on December 6, 2011.

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim on which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though a court must accept a plaintiff's factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Also, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. The factual allegations of a pro se complaint must be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

According to the pro se complaint in this case, Thomas and Paka are Muslims. They allege that it is IDOC policy not to serve Halal meals to Muslim prisoners, although Jewish prisoners are furnished with Kosher meat. Thomas and Paka argue that they should be permitted to receive Kosher meals, and that IDOC's refusal to permit them, as Muslims, to receive a Jewish religious diet is an infringement of their religious freedom. Named as Defendants in the case are Gladyse Taylor, the former acting director of IDOC, Randy Grounds, the warden of Robinson, Dana Tylka, the assistant warden of programs at Robinson, Pat Quinn, the governor of Illinois, and Sangamon County, Illinois.[2]

---

2.  The Court notes in passing that this action is purportedly brought as a class action. Naturally, this does not prevent the Court from screening the case pursuant to 28 U.S.C. § 1915A. "[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff[ ]." *Hall v. Brown*, Civil No. 10-724-GPM, 2011 WL 1403036, at *1 n.1 (S.D. Ill. Apr 13, 2011) (quoting *Morlan v. Universal Guar. Life Ins. Co*., 298 F.3d 609, 616 (7th Cir. 2002)). Also, "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action[.]" *Craig v. Cohn*, 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (quoting *Caputo v. Fauver*, 800 F. Supp. 168, 170 (D.N.J. 1992)).

As an initial matter, the Court expresses considerable skepticism that any of the parties named as Defendants by Thomas and Paka were personally involved in a deprivation of Plaintiffs' constitutional rights. To state a claim under 42 U.S.C. 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under the color of state law. *See West v.. Atkins*, 487 U.S. 42, 49 (1988). However, "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). *See also Burks v. Raemisch*, 555 F.3d 592, 593, 596 (7th Cir. 2009) (citing *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)) (stating that "Section 1983 does not establish a system of vicarious responsibility" and thus "public employees are responsible for their own misdeeds but not for anyone else's."); *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002) ("[U]nder § 1983, a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinate" and instead "the supervisory officials also must have had some personal involvement in the constitutional deprivation[.]"). While it is the case that Taylor, Grounds, and Tylka are IDOC officials and thus acting under state law, the Court finds it exceedingly unlikely that any of these Defendants have responsibility for the meals that are served in IDOC facilities. Moreover, the Court is at a complete loss to understand how Sangamon County might have violated Plaintiffs' civil rights. *See Willis v. Hulick*, Civil No. 09-cv-447-JPG, 2010 WL 358836, at *2 (S.D. Ill. Jan. 25, 2010) (citing *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)) (a Section 1983 plaintiff must make allegations that "associate specific defendants

with specific claims . . . so [the] defendants are put on notice of the claims brought against them and so they can properly answer the complaint.").

Furthermore, Thomas and Paka have failed to state a claim for a violation of their First Amendment right of free exercise of their religion. The Supreme Court of the United States has held that "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). A prisoner is entitled to practice his or her religion as long as the practice does not unduly burden the institution. *See Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992). However, a prisoner's right to exercise his or her religion is balanced against the legitimate goals of the institution. *See Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). To constitute a violation of the First Amendment, the government must place a substantial burden on a prisoner's observation of a central religious belief or practice. *See Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972). If a plaintiff is successful at showing such a burden, the government must then show a compelling interest justifies the burden. *See id*. at 221. The United States Supreme Court has established that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Accordingly, restrictions that infringe upon a prisoner's exercise of his or her religion will be upheld if they are reasonably related to a legitimate penological interest. *See id*. Relevant factors include: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest; (2) whether there are other means of exercising the right in question for prisoners; (3) the impact accommodating the claimed right would

have on guards, other inmates, and prison resources; and (4) the availability of obvious and easy alternatives to the regulation. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987). Legitimate penological demands include security and economic concerns. *See Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). The prisoner has the burden of disproving the validity of a challenged prison regulation. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Also, within the state penal system context, federal courts accord deference to the decisions of prison administrators. *See Turner*, 482 U.S. at 85. In this instance, Thomas and Paka do not allege that their Muslim faith requires them to eat Halal-certified meat, and they concede that IDOC makes available to prisoners who believe that the consumption of meat that is not Halal-certified is contrary to their religion an alternative vegetarian diet. Thus, IDOC has done nothing to prevent Thomas and Paka from practicing their religious beliefs; although Thomas and Paka have not been provided with a Halal diet, which, in any event, as discussed, their religion does not require, they have been furnished with an alternative diet that does not require them to consume any food that they believe is inconsistent with their faith. Therefore, prison officials have not substantially burdened Plaintiffs' free exercise of their religion.[3]

---

3. To the extent that Thomas and Paka seem to suggest that they are suffering adverse effects to their health as a result of the soy protein contained in the vegetarian diet furnished by IDOC, neither Plaintiff alleges that he has called his possible allergy to soy to the attention of medical personnel at Pontiac and Robinson or otherwise sought an appropriate dietary accommodation of such an allergy. With respect to claims for deliberate indifference to a prisoner's serious medical needs, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Put another way, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id*. (emphasis added). In this case there is nothing in the allegations of the complaint to suggest that prison officials were or are aware of any adverse effects to Plaintiffs' health caused by soy.

To the extent that Thomas and Paka are attempting to assert a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., the Court likewise finds that such a claim fails. The RLUIPA provides that institutions receiving federal financial assistance may not "impose a substantial burden on the religious exercise" of an institutionalized person unless it is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(2). The United States Supreme Court has held that religious accommodations cannot override an institution's other significant interests. *See Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005) ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety."). Rather, RLUIPA is to be "applied in an appropriately balanced way, with particular sensitivity to security concerns," and courts are to "apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id*. at 722-23 (quotation omitted). Thomas and Paka have failed to state a claim under RLUIPA because the statute only affords relief when there has been a "substantial burden" on one's right to exercise his or her religion. While the statute itself does not define "substantial burden," the United States Court of Appeals for the Seventh Circuit has clarified that a "substantial burden" under RLUIPA is one that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). In this instance, as discussed, although IDOC has not furnished Thomas and Paka with a Halal diet, which is not compelled under their religion, IDOC has supplied Thomas and Paka with an alternative diet that does not require them to consume any food that they

believe is inconsistent with their faith.  Thus, IDOC has not rendered effectively impracticable Plaintiffs' exercise of their religion.

Finally, Thomas and Paka have failed to state a claim for violation of their right of equal protection.  The Fourteenth Amendment provides, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The right of equal protection "has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers.  The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action."  *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970).  Thus, to show an equal protection violation, a plaintiff "must demonstrate intentional or purposeful discrimination by . . . [state] authorities to favor one class over another."  *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980).  It is not necessary for a plaintiff asserting an equal protection violation "to prove that the challenged action rested solely on . . . discriminatory purposes" or even that "a [discriminatory] purpose was the 'dominant' or 'primary' one" underlying a challenged official act.  *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Still, the notion of " '[d]iscriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation and footnote omitted).  To state a claim for an equal protection violation, a prisoner must allege that he or she is a member of a protected class, and that state actors treated members of the prisoner's class less favorably than people not in the class but who are similarly situated.  *See*

*Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *Harris v. Greer*, 750 F.2d 617, 618-19 (7th Cir. 1984). *Accord Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (to state an equal protection claim, a prisoner must allege facts showing that (1) the prisoner is similarly situated with other prisoners who received more favorable treatment and (2) the discriminatory treatment of the prisoner was based on a constitutionally-protected interest such as race). A required threshold showing, then, is that a plaintiff was treated differently than others who are similarly situated. *See, e.g., Desris v. City of Kenosha, Wis.*, 687 F.2d 1117, 1119 (7th Cir. 1982). Also, "[t]o be similarly situated, 'comparators must be . . . prima facie identical in all relevant respects.'" *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2009) (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005)). In this case, Thomas and Paka, as Muslims, obviously are not similarly situated to Jewish IDOC prisoners. The dietary restrictions of Muslims are not the same as those of the Kosher diet for Jewish inmates. Accordingly, different steps must be taken to accommodate the various dietary restrictions. Finally, there are no facts alleged in the complaint that show that the Muslim religion requires Thomas and Paka to eat Halal-certified meat. Plaintiffs are not being intentionally discriminated against by IDOC because of their religion, but rather IDOC is simply making accommodations for the multiple religions practiced by prisoners in the agency's custody. Thus, Thomas and Paka cannot establish a violation of their equal protection rights. This case will be dismissed.[4]

---

4. To the extent Thomas and Paka are attempting to assert a claim under the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.*, having concluded that Thomas and Paka have no viable claims under federal law, the Court in its discretion declines to exercise jurisdiction over any state-law claims by Plaintiffs. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

To conclude, pursuant to 28 U.S.C. § 1915A, the Court finds that the complaint in this case fails to state a claim upon which relief may be granted, and therefore this action is **DISMISSED**. Thomas and Paka are advised that the dismissal of this case will count for each of them as a "strike" under 28 U.S.C. § 1915(g). *See Boriboune v. Berge*, 391 F.3d 852, 854-55 (7th Cir. 2004) (in a jointly-litigated action filed in forma pauperis, under the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (codified in various sections of 28 and 42 U.S.C.), when any claim in a complaint or appeal is frivolous, malicious, or fails to state a claim upon which relief may be granted, all the prisoners who jointly filed the action incur strikes). The Clerk of Court will enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  December 9, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge